# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

CHARLES CUNNINGHAM,                                    :

          Petitioner,                     :          Case No. 3:13-cv-129

                                :          District Judge Walter Herbert Rice
     -vs-                                          Magistrate Judge Michael R. Merz

                                :

ERNIE MOORE, Warden,
  Lebanon Correctional Institution

                                :

          Respondent.

---

# REPORT AND RECOMMENDATIONS

---

Petitioner Charles Cunningham brought action pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus; Petitioner seeks release from confinement imposed as part of the judgment of a State court in a criminal action. Upon initial review under Rule 4 of the Rules Governing § 2254 cases, the Magistrate Judge ordered Respondent to answer the Petition and Respondent did so on August 16, 2013 (Doc. Nos. 6, 7). In the Order for Answer, the Court set a date for Petitioner to file a reply of 21 days after the Answer was filed. That time expired on September 9, 2013, but no reply has been filed as of the date of this Report.

Cunningham pleads the following Grounds for Relief:

> **Ground One:** Ineffective assistance of counsel in violation of the 5[th], 6th, and 14th Amendments.
>
> **Supporting Facts:** Counsel failed to object to replaying of the 911 tape, in violation of earlier Court ruling. Trial counsel did not communicate with the Petitioner, preventing investigation of known facts, and failed numerous other duties owed the Client, in violation of the U.S. Constitution.

**Ground Two**:  Insufficient Evidence in violation of the 5th and 14th Amendments.

**Supporting Facts:**  Prior calculation was not proven.  Petitioner had no gunshot residue on his person to show he faired [sic] a weapon.  He even went to the hospital with the victim's family.  No eyewitness testimony, except for another suspect, who testified to avoid conviction himself.   This violates the 5th and 14th Amendments of the U.S. Constitution.

**Ground Three:**  Ineffective Assistance of Appellate Counsel in violation of the 5th, 6th, and 14th Amendments.

**Supporting Facts:**   Appellate Counsel rendered ineffective assistance of appellate counsel by failing to raise specific challenge to prior calculation and design, based on the Court's own statement.  Also the allied offenses requiring merger.  Also distinct claims of ineffective assistance of trial counsel in violation of the 5th, 6th, and 14th Amendments.

**Ground Four:**   *Batson* violation, in violation of the 5th and 14th Amendments.

**Supporting Facts:**  The State purposely challenged and removed the only African-American juror in a Trial of an African-American, which resulted in a Trial with an all-white jury, in violation of the 5th and 14th Amendments of the U.S. Constitution.

**Ground Five:**  Cumulative effect of all errors.   Fifth and Fourteenth Amendments.

**Supporting Facts:**   The combined effect of all constitutional errors rendered the resulting conviction and sentence a violation of Due Process and a Fair Trial under the 5th and 14th Amendments of the U.S. Constitution.

**Ground Six:**  Erroneous evidentiary rulings.  Fifth and Fourteenth Amendments.

**Supporting Facts**:   The trial court improperly removed a juror after the trial began, improperly denied a suppression motion, and improperly allowed numerous voice mails, 911 tapes, and even prior 911 calls, and denied a motion to dismiss counsel as ineffective.  These violations deprived this Petitioner of a fair trial and the Due Process of law guaranteed under the 5th and 14th Amendments of the U.S. Constitution.

(Petition, Doc. No. 1.)

**Ground One:  Ineffective Assistance of Trial Counsel**

In his First Ground for Relief, Cunningham asserts his trial attorney was ineffective in various ways.  Respondent asserts this Ground for Relief is procedurally defaulted because, although it was raised in the court of appeals, Cunningham abandoned it when he appealed further to the Ohio Supreme Court (Answer, Doc. No. 7, PageID 4382).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir.), *cert. denied sub nom, Eley v. Houk,* __ U.S. __, 131 S.Ct. 822 (2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

In his Petition, Cunningham claims that he exhausted this claim (Doc. No. 1, PageID 7). Cunningham's Memorandum in Support of Jurisdiction in the Ohio Supreme Court is Exhibit 41 in the state court record (Doc. No. 6-1, beginning at PageID 361). The only Proposition of Law about ineffective assistance of trial counsel relates to lack of questioning a juror "regarding alleged disabilities." *Id.* at PageID 362. Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)(citations omitted). Cunningham's First Ground for Relief should be dismissed with prejudice as procedurally defaulted.


**Ground Two:  Insufficient Evidence**


In his Second Ground for Relief, Cunningham asserts there was insufficient evidence to convict him of various elements of the crimes of which he was convicted.

As to the sub-claim that there was insufficient evidence on the element of prior calculation and design, Respondent urges that it is procedurally defaulted on the same basis as the First Ground for Relief. Upon examining Cunningham's Memorandum in Support of Jurisdiction, the Court finds that he stated a general proposition about insufficient evidence, Proposition of Law 4, he makes no argument about the element of prior calculation and design. This sub-claim is therefore procedurally defaulted because the claim that there was insufficient evidence of prior calculation and design was not pursued before the Ohio Supreme Court.

Alternatively, the sub-claim is without merit as are the remaining portions of Ground Two.  Because Cunningham's habeas petition was filed after the effective date of the

Antiterrorism and Effective Death Penalty Act, he can succeed on any constitutional claim actually decided by the state courts only if he can show that the decision was an objectively unreasonable application of clearly established law set forth in holdings of the United States Supreme Court.  28 U.S.C. § 2254(d)(1), *Harrington v. Richter,* 562 U.S. ___, 131 S.Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 141 (2005); *Bell v. Cone,* 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000);  *Bell v. Howes,* 703 F.3d 848, 852 (6th Cir. 2012).   In a sufficiency of the evidence habeas corpus case, deference must be given first to the trier-of-fact's verdict under *Jackson v. Virginia,* 443 U.S. 307 (1979), and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett,* 559 U. S. [766], ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062 (2012)(*per curiam*).

The Second District Court of Appeals decided this claim on the merits as Cunningham's Fifth Assignment of Error.  It wrote:

**[\*P77]** Fifth Assignment of Error:

**[\*P78]**  "CUNNINGHAM'S  CONVICTIONS  WERE  NOT

SUPPORTED BY SUFFICIENT EVIDENCE AND THE MANIFEST WEIGHT OF THE EVIDENCE DOES NOT SUPPORT CUNNINGHAM'S CONVICTIONS."

[*P79] A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541 (1997). The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991):

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

[*P80] [Omitted – deals with claim of manifest weight of the evidence, which is not a federal constitutional claim.]

[*P81] Defendant was convicted of one count of aggravated murder in violation of R.C. 2903.01(A), two counts of felonious assault in violation of R.C. 2903.11(A)(2), two counts of murder in violation of R.C. 2903.02(A), two counts of felony murder in violation of R.C. 2903.02(B) and 2903.11(A)(2), two counts of having weapons while under disability in violation of R.C. 2923.13(A)(3), and one count of tampering with evidence in violation of R.C. 2921.12(A)(1). We will briefly summarize the elements the State needed to prove beyond a reasonable doubt in order to secure convictions on the counts set forth in the indictment.

[*P82] R.C. 2903.01(A) provides: No person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy."

[*P83] R.C. 2903.02(A) provides: No person shall purposely cause the death of another or the unlawful termination of another's pregnancy."

[**P84**] R.C. 2903.11(A)(2) provides: No person shall knowingly do either of the following: (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

[**P85**] R.C. 2903.02(B) provides: No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."

[**P86**] R.C. 2923.13 provides, in part:

> (A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

> \*                              \*                              \*

> (3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

[**P87**] R.C. 2921.12(A)(1) provides:

> (A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

> (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation \* \* \*.

[**P88**] A review of the evidence at trial establishes that the State presented evidence adequate to permit any rational trier of fact to find that the essential elements of the crimes proven beyond a

reasonable doubt. Robinson was in the car with Defendant on the night of the murders. (*Id*. at 2572-2573.) Robinson testified that Defendant followed Serna and Shook and then blocked Shook's vehicle with Defendant's SUV. (*Id*. at 2570, 2669.) After Defendant cut them off with his SUV, Defendant got out of his vehicle in a rage. (*Id*. at 2571.) Robinson witnessed Defendant punch Serna in the stomach and then shoot Serna and Shook. (*Id*. at 2572-73.) Defendant then pointed the gun at Robinson and told him to "get the hell out of here." (*Id*. at 2572-73.) As Robinson drove away in Defendant's SUV, he noticed Defendant approach Carson on the sidewalk and walk off with him. (*Id*. at 2573-2574.)

[*P89] Carson corroborated Robinson's testimony by testifying that he got out of Shook's vehicle and started walking when he heard gunshots and a scream. (*Id*. at 2674.) He turned around and saw Shook coming through the two trucks towards her driver's side seat. Then he heard more gunshots and saw Shook fall face first on the pavement. (*Id*. at 2674-76.) Carson then saw Defendant coming through the trucks and it looked like Defendant was stuffing something in the back of his pants. (*Id*. at 2676-2678.) At that point, Defendant then told Carson to walk with him and they proceeded to walk towards the south end of Springfield. (*Id*. at 2678.) While they were walking, Defendant told Carson, "You didn't see anything. Don't say anything." (*Id*. at 2679.)

[*P90] The surveillance video from near the scene of the crimes was played for Carson while he was on the witness stand at trial. He identified himself and Defendant on the video walking. (*Id*. at 2681-82.) Carson testified that they were walking side by side because he was not sure if Defendant would shoot again. (*Id*. at 2683-84.)

[*P91] Further, the jurors heard the 911 call that Shook placed around the time of the murders. On the 911 tape, the jury could hear a woman screaming for help and saying, "Get off of her." (*Id*. at 1652.) Amy Morris and Keisha Serna were able to identify the voices on the 911 call. (*Id*. at 2372-75; 2968-2972.) They stated that Shook was the one calling 911 dispatchers, and they both identified Serna in the background screaming repeatedly for Defendant to stop. (*Id*. at 2372-2375, 2972.) They also identified Defendant as the person on the 911 call who said, "I'm not playing man." (*Id*. at 2373, 2375, 2972.) The gunshots themselves can be heard on the 911 tape. No one at trial identified Robinson's voice on the 911 call.

[*P92] Donna Rose, a forensic scientist in the Trace Unit at the Bureau of Criminal Identification and Investigation, stated that she examined two samples from Defendant and was able to detect a particle that was highly indicative of gunshot residue on one of Defendant's samples. (*Id.* at 2739-2745.) These samples were from Defendant's right and left hands. (*Id.*) The samples were collected by Detective Hicks on October 4, 2008 around 7:00 or 8:00 a.m. while Cunningham was at Miami Valley Hospital with Serna's family. (*Id.* at 2764-2765.)

[*P93] Further, several witnesses testified to threats that Defendant made to Serna throughout the evening and early morning of October 3rd and 4th, 2008. Caitlin Smith saw an altercation between Defendant and Serna while she was standing outside of G.Z. Petes. During the altercation, she heard Defendant threaten Serna by saying, "Bitch, if I can't have my family, you can't have anything." (Tr. 1725-1726.) At Burger King, Defendant argued with Serna and Shook and hit Shook's vehicle. (*Id.* at 2568, 2665.) The manager heard Defendant say he was going to "hurt 'em." (*Id.* at 2482-2484.) Another Burger King employee, Robert Farmer, heard Defendant say, "I'll kill everybody in the truck." (*Id.* at 2502.)

[*P94] Serna also made statements to Marcus Douthy the night of the murders about Defendant, and she sounded panicked. She was yelling and almost crying when she stated, "[Defendant's] following me baby. he's following me, he's crazy, he's crazy * * * ." (*Id.* at 2440.) During this conversation, Douthy heard Shook in the background saying, "What's he doing?", and then the phone went dead. (*Id.* at 2443-2444.)

[*P95] Damon Burks, who resided with Defendant for a short period of time around the time of the murders, testified that on the morning of the shootings Defendant spoke with him on the telephone. Defendant said, "I messed up, I messed up." (*Id.* at 2758.)

[*P96] Moreover, just two and one-half days before the murders, Defendant left Serna a voicemail in which he said he wished he could choke her and make her listen and pay attention to him. (*Id.* at 2349-2355; 2369-2371.) Shortly before Serna and Shook were killed, Defendant left Serna two voicemails in which he stated his frustration that Serna would not answer his calls to her. (*Id.* at 2349-55; 2365-68.) Defendant called Serna's phone eleven times

between 2:17 a.m. and 2:46 a.m. the morning of the murders. (*Id*. at 2895-2900.)

[**P97**] Finally, a deputy clerk with the Clark County Common Pleas Clerk of Courts stated that Defendant had two prior convictions. (*Id*. at 2393-2395.) These convictions were for aggravated assault and possession of crack. (*Id*. at 2394-2395.) Officer Douglas Hobbs confirmed that the person he arrested for the possession of crack charge was in fact Defendant. (*Id*. at 2401-2403.) The deputy clerk further testified that neither of the files pertaining to the two convictions contained a court order relieving Defendant from his disability to carry firearms. (*Id*. at 2397.)

[**P98**] Based on a review of the testimony and evidence presented at trial, and viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt.

[**P99**] Further, the evidence summarized above is competent, credible evidence of Defendant's guilt. Based on this record, we cannot find that Defendant's convictions are against the manifest weight of the evidence.

[**P100**] Despite the overwhelming evidence of his guilt presented at trial, Defendant argues that he should not have been convicted of any of the offenses set forth in the indictment because the State failed to prove, beyond a reasonable doubt, that Defendant shot Serna and Shook and that he had possession of a gun to do so. Defendant bases his argument on his own testimony that Robinson committed the murders and that Robinson lacked credibility. The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

[**P101**] In *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 Ohio App. LEXIS 3709, 1997 WL 476684, *4 (Aug. 22, 1997), we observed:

Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of

particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.

[*P102] This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 Ohio App. LEXIS 4873, 1997 WL 691510 (Oct. 24, 1997). Based on our review of the record before us, we cannot find that the jury lost its way in arriving at its verdict.

[*P103] Defendant also argues that even if he committed the murders of Shook and Serna, "the State did not prove beyond a reasonable doubt that those murders were conducted with prior calculation and design. The jury acquitted Cunningham of the aggravated murder of Shook — meaning they did not find that her death was the result of prior calculation and design." In short, Defendant appears to argue that the jury's not guilty verdict on the count charging Defendant with aggravated murder of Shook is inconsistent with the guilty verdict on the count charging Defendant with aggravated murder of Serna. We do not agree.

[*P104] In *State v. Hawkins*, 2d Dist. Montgomery No. 21691, 2007 Ohio 2979, at ¶ 23-24, we wrote:

> Courts in Ohio have held on numerous occasions that an inconsistency in a verdict cannot arise from inconsistent responses to different counts. *State v. Brown* (1984), 12 Ohio St.3d 147, 12 OBR 186, 465 N.E.2d 889, syllabus; *State v. Hayes*, 166 Ohio App.3d 791, 2006 Ohio 2359, 853 N.E.2d 368, at ¶35. Instead, an inconsistency only arises when a jury gives inconsistent responses to the same count. *State v. Washington* (1998), 126 Ohio App.3d 264, 276, 710 N.E.2d 307. The Ohio Supreme Court has explained that "each count in an indictment charges a distinct offense and is independent of all other counts. Following that reasoning, the court found that a jury's decision as to one count is independent of and unaffected by the jury's finding on another count." *Id*. See, also, *Browning v. State* (1929), 120 Ohio St. 62, 7 Ohio Law Abs. 140, 165 N.E.2d 566, paragraph three of the syllabus.

Moreover, in the context of inconsistent verdicts of conviction and

acquittal, the United States Supreme Court has provided, "'The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.'" *Dunn v. United States* (1932), 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356, quoting *Steckler v. United States* (C.A.2, 1925), 7 F.2d 59, 60. In *United States v. Powell* (1984), 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461, the Court reiterated its holding in *Dunn*, explaining that inconsistencies between verdicts on separate counts do not necessarily mean that a jury made a mistake. Even if an inconsistency was found to be an error working against a defendant, the Court stated that review is unwarranted, for "an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake." *Id*. at 66.

[*P105] The aggravated murders of Serna and Shook were set forth in separate counts of the indictment. Further, it is not necessarily inconsistent for a jury to find that Defendant had the requisite, prior calculation and design in murdering Serna, who he had threatened a number of times leading up to the morning of the murder, while he did not have the prior calculation and design to murder Shook. Therefore, we decline to find that a not guilty finding on Count 5 of the indictment is inconsistent with or precludes a finding of guilty on Count 1 of the indictment.

[*P106] The fifth assignment of error is overruled.

*State v. Cunningham*, 2012 Ohio 2794, 2012 Ohio App. LEXIS 2443 (2nd Dist. June 22, 2012).

In reaching its conclusion that there was sufficient evidence, the Second District applied the same standard the Supreme Court adopted in *Jackson v. Virginia, supra*. Reviewing the Second District's decision under the deferential AEDPA standard, this Court agrees that there was sufficient evidence presented to the jury to convict Cunningham of each of the crimes with which he was charged. Ground Two should be dismissed with prejudice.

**Ground Three:  Ineffective Assistance of Appellate Counsel**

In his Third Ground for Relief, Cunningham claims he received ineffective assistance of appellate counsel in three respects:  (1) failing to raise a specific challenge to the prior calculation and design element; (2) failure to raise claims that certain offenses required merger under the Ohio multiple counts statute, Ohio Revised Code § 2941.25; (3) failure to raise "other distinct claims of ineffective assistance of trial counsel."

As Respondent points out, a habeas petitioner may only raise claims which he has exhausted in the state courts.  Cunningham raised ineffective assistance of appellate counsel claims in the proper manner prescribed by Ohio law, to wit, by filing an application to reopen the direct appeal under Ohio R. App. P. 26(B).  The Second District Court of Appeals considered this application on the merits, but rejected it.  As with Cunningham's insufficient evidence claim, this Court must defer to the state court's decision unless it was an objectively unreasonable application of clearly established federal law.

In rejecting Cunningham's 26(B) application on the merits, the Second District first noted that the appropriate federal standard is provided by *Strickland v. Washington*, 466 U.S. 668 (1984).  It found Cunningham's first proposed assignment of error was without merit because appellate counsel had raised a claim that there was insufficient evidence to prove prior calculation and design.  *State v. Cunningham*, Case No. 10-CA-57, PageID 456 (Ohio App. 2nd Dist. Dec. 5, 2012)(unreported, copy at Doc. No. 6-1, PageID 454 et seq.)  It found Cunningham's second proposed assignment of error regarding the Double Jeopardy Clause was without merit because the trial court had made appropriate mergers of offenses before sentencing.  *Id.* at PageID 457.

Regarding Cunningham's claim that his appellate counsel failed to argue that it was error for the trial court not to grant his request for new counsel, the Second District reviewed the history of Cunningham's relationship with counsel in the trial court and concluded the proposed assignment would have been without merit so it was not ineffective assistance of appellate counsel to fail to raise it. *Id.* at PageID 458-460.

The Second District applied the correct federal standard and Cunningham has not shown that the application was in any way objectively unreasonable. The Third Ground for Relief is without merit and should be dismissed with prejudice.

**Ground Four:  *Batson* Violation**

In his Fourth Ground for Relief, Cunningham asserts that he was denied due process of law and equal protection when the only African-American in the venire was excused by the prosecution.

As Respondent points out, this claim was raised on direct appeal but was not pursued on appeal to the Ohio Supreme Court. It is therefore procedurally defaulted on the same basis as Ground One and should be dismissed with prejudice.

**Ground Five:  Cumulative Error**

In his Fifth Ground for Relief, Cunningham asserts that the accumulation of all the constitutional errors made at trial makes his conviction and sentence unconstitutional.

Federal habeas corpus is available only to correct federal constitutional violations. 28

U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. ___, 131 S. Ct. 13; 178 L. Ed. 2d 276 (2010)*;*

*Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips,* 455 U.S. 209 (1982), *Barclay v.*

*Florida,* 463 U.S. 939 (1983).   However, "post-AEDPA, not even constitutional errors that

would not individually support habeas relief can be cumulated to support habeas relief."

*Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012), *quoting Hoffner v. Bradshaw*, 622

F.3d 487, 513 (6th Cir. 2010) (quoting *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)).   In

other words, constitutional errors which in themselves might be harmless error cannot be

accumulated to justify habeas relief.

   Ground Five should be dismissed for failure to state a claim upon which habeas corpus

relief can be granted.


## Ground Six:  Improper Removal of a Juror and Evidentiary Rulings; Denial of Motion to Suppress

   In his Sixth Ground for Relief, Cunningham asserts the trial judge improperly removed a

juror after trial began, improperly denied his motion to suppress, and made a number of

prejudicial evidentiary rulings.

   As to the removal of a juror claim, Respondent asserts this claim was never fairly

presented to the state courts as a federal constitutional claim (Answer, Doc. No. 7, PageID 4389-

90).   As Respondent notes, Cunningham argued this claim in the court of appeals solely as a

matter of state and repeated the same arguments when he was *pro se* before the Ohio Supreme

Court.

   To preserve a federal constitutional claim for presentation in habeas corpus, the claim

must be "fairly presented" to the state courts in a way which provides them with an opportunity

to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009). If a petitioner's claims in federal habeas rest on different theories than those presented to the state courts, they are procedurally defaulted. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002), *citing Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001)("relatedness" of a claim will not save it). Because Cunningham did not fairly present the juror removal claim as a federal constitutional claim in the Ohio courts, he has procedurally defaulted that claim.

With respect to his motion to suppress claim, that claim was made in the state courts only under the Fourth Amendment, whereas here Cunningham asserts violations of the Fifth and Fourteenth Amendments. That subclaim is also procedurally defaulted.

Cunningham's subclaim relating to admission of evidence, to the extent it claims violations of Ohio evidence law, is not cognizable in federal habeas corpus. "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). To the extent Cunningham is claiming that admission of the objected-to evidence denied him a fair trial, he has procedurally defaulted that claim by abandoning it in his appeal to the Ohio Supreme Court.

16

With respect to the subclaim that counsel should have been dismissed as ineffective, the Court finds that claim was found to be without merit by the Second District when Cunningham pled it as an omitted assignment of error in his 26(B) application.  For the reasons given above with respect to the ineffective assistance of appellate counsel claim, the Second District's decision that the claim lacked merit is not an objectively unreasonable application of *Strickland v. Washington* and its progeny.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

September 18, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such

17

portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).